FILED
United States Court of Appeals
Tenth Circuit

February 7, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RAY BIRMINGHAM,

        Plaintiff - Appellant,

    v.

EXPERIAN INFORMATION
SOLUTIONS, INC.; VERIZON
COMMUNICATIONS; VODAFONE
GROUP, PLC., a joint venture, d/b/a
Verizon Wireless; CELLULAR INC.
NETWORK; UTAH RSA 6;
VERIZON POWER PARTNERS;
WASATCH UTAH RSA NO. 2, d/b/a
Verizon Wireless; VERIZON
WIRELESS UTAH, operating under
the name and style of Verizon
Wireless; VERIZON WIRELESS
(VAW),

        Defendants - Appellees,

TRANSUNION,

        Defendant.

No. 09-4146

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. NO. 2:06-CV-00702-BSJ)**

Ronald W. Ady, Salt Lake City, Utah, for Plaintiff - Appellant.

Meir Feder, (Dawn Elizabeth McFadden, with him on the briefs), Jones Day,
Cleveland, Ohio, for Defendant - Appellee, Experian Information Solutions, Inc.;

and Steve K. Gordon, Durham, Jones & Pinegar, Salt Lake City, Utah, for Defendants - Appellees Verizon Communications, Inc.; Vodafone Group, Plc; Cellular Inc. Network Corporation; Utah RSA 6, Limited Partnership; Verizon Power Partners, Inc., Wasatch Utah RSA No. 6, Limited Partnership; Verizon Wireless Utah, L.L.C.; and Verizon Wireless (VAW), L.L.C.

Before **LUCERO**, **HARTZ**, and **HOLMES**, Circuit Judges.

**HARTZ**, Circuit Judge.

Raymond Birmingham was the victim of identity theft. Verizon Wireless closed two fraudulent accounts opened in his name, but he disputed charges to his legitimate accounts and closed those as well. Verizon then reported his failure to pay the charges to the three major credit-reporting agencies—Experian Information Solutions, Inc. (Experian); Equifax; and TransUnion. Birmingham disputed these reports and was dissatisfied with the agencies' responses. Claiming violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, et seq., and Utah law, he filed suit in the United States District Court for the District of Utah against the three agencies and several entities (the Verizon Defendants) that he believed to be responsible for the allegedly incorrect reports to the agencies. On this appeal Birmingham challenges the district court's grant of summary judgment to Experian and the dismissal of his claims against the Verizon Defendants without granting him leave to add a defendant. We have jurisdiction under 28 U.S.C. § 1291.

With respect to Experian, the sole issue before us is whether Birmingham is entitled to liquidated and punitive damages under the FCRA because Experian intentionally or recklessly failed to investigate adequately his dispute with Verizon. We hold that the district court properly granted summary judgment on the issue because of the absence of evidence of intentional or reckless misconduct.

The issues concerning the Verizon Defendants are whether the entity that reported Birmingham's failure to pay his telephone charges was a defendant in this case and, if not, whether the district court properly denied his motion to amend his complaint to name that entity. As Birmingham learned several months into the litigation, the entity that informed the credit-reporting agencies of his failure to pay his phone bill was Cellco Partnership (Cellco). Cellco, however, does not appear in the caption of Birmingham's initial or amended complaints. Birmingham contends that Cellco was nevertheless a party or, in the alternative, that the district court should have added Cellco as a defendant because he moved to add Cellco the day before the final pretrial conference and because it was a necessary party under Federal Rule of Civil Procedure 19(a). We reject these contentions and hold that the district court properly dismissed the Verizon Defendants and properly denied Birmingham's motion to amend his complaint to add Cellco as a defendant.

Because there is very little overlap in the facts relevant to the dispositions of the claim against Experian and the claims against the Verizon Defendants, we will set forth the facts in the sections devoted to these distinct claims. We begin with the claim against Experian.

## I. CLAIM AGAINST EXPERIAN

Birmingham alleges that Experian violated § 1681e(b) and § 1681i(a)(1) of the FCRA. Section 1681e(b) states: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Under § 1681i(a)(1), if a consumer notifies a consumer reporting agency of a dispute concerning the completeness or accuracy of information in the consumer's file,

> the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

*Id.* § 1681i(a). Section 1681*o*(a) provides that a consumer is entitled to actual damages for a negligent violation of the FCRA. *See id.* at § 1681*o*(a). Under § 1681n(a), however, the consumer need not prove actual damages if the violation is willful, but may recover punitive damages and statutory damages ranging from $100 to $1,000. *See id.* at 1681n(a). A "willful" violation is either an intentional

violation or a violation committed by an agency in reckless disregard of its duties under the FCRA. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57–58 (2007). Recklessness is measured by "an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 68 (internal quotation marks omitted). "[A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

Birmingham's opening brief on appeal challenges the district court's ruling that he had not established actual damages. But he abandoned that challenge at oral argument. His counsel surprised the court by stating: "We didn't raise the issue of actual damages with Experian." And when asked: "And your damages claim, then, is essentially you had proof of willfulness, and therefore you're entitled to statutory damages regardless of whether you put on evidence of actual damages?" he responded, "Correct." Accordingly, the sole issue before us is whether Experian was entitled to summary judgment on the claim that it willfully violated the FCRA.

"We review de novo the district court's grant of summary judgment." *Fredericks v. Jonsson*, 609 F.3d 1096, 1098 (10th Cir. 2010). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on

file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2) (2009); *cf.* Fed. R. Civ. P. 56(a) (effective Dec. 1, 2010) ("The court shall grant summary judgment . . ."). "[W]e must view the facts in the light most favorable to the nonmoving party." *Fredericks*, 609 F.3d at 1097.

Birmingham has presented little evidence regarding what Experian knew and when it knew it. The record shows the following:

In December 2003, Birmingham discovered that fraudulent charges had been made to one of his credit cards. He filed a statement of identity theft with the police department in Reno, Nevada (where he lived at the time), and sent a letter to the Las Vegas, Nevada, police department. He also reported the fraud to Experian by telephone and requested that it add a security alert to his file. Experian sent him a letter (incorrectly addressed to the name "Raymond Burnham" but listing the proper Reno address) dated December 1, 2003, stating that a fraud security alert had been added to his personal credit report, suggesting that he consider adding a fraud-victim statement that would remain on his credit file for seven years, and detailing the information needed to add such a statement to his file. Birmingham does not recall providing that information to Experian, and Experian has no record of receiving such information from him.

On January 12, 2004, Birmingham reported to Verizon Wireless, with whom he maintained two mobile telephone accounts, that two fraudulent

telephone accounts had been opened in his name and that fraudulent charges had appeared on one of his legitimate accounts, apparently as the consequence of the same identity theft. Although Verizon Wireless terminated the fraudulent accounts the next day, Birmingham alleges that it failed to credit him for the fraudulent charges incurred on the legitimate account. After Birmingham failed to make any payments on his legitimate accounts for several months, Verizon closed those two accounts and reported the unpaid charges to Experian, Equifax, and TransUnion.

Birmingham complained to Equifax and TransUnion; and both investigated his disagreement with Verizon and received verification of the information from Verizon. But there is a dispute of fact regarding when and how Birmingham complained to Experian, which conducted no investigation. In a sworn declaration Birmingham asserted that he had first "disputed [with Experian] the Verizon Wireless charges in writing on January 21, 2005 . . . ." Aplt. App., Vol. III at 1065. In deposition testimony, however, he said that he had no recollection of sending anything in writing to Experian in January 2005. Instead, he stated that he "disputed online," *id.*, Vol. I at 438, with all three credit agencies, and that he did so approximately every six months; yet he had no records of doing so (he said that these online communications could not be printed out) and could not provide the date, week, or even month of any communication to Experian. The only document from Experian for the relevant

time period was a letter dated January 21, 2005, produced by Experian in discovery; and it indicated that he had not contacted Experian. It stated that Experian had "added an Initial Security Alert to [Birmingham's] credit file *as requested on [his] behalf by one or more of the nationwide consumer credit reporting agencies*." *Id.*, Vol. II at 454 (emphasis added). The letter told him what information he would need to provide to place an extended fraud alert on his credit file and to block information on his file that he believed resulted from identity theft. The required information included "appropriate proof of [his] identity" (such as his social security number) and an identity-theft report, including "a copy of a report you have filed with a federal, state, or local law enforcement agency." *Id.* at 455. Birmingham, however, never sent any credit-reporting agency a copy of the Reno police report or his letter to the Las Vegas police.

A few months later, on July 20, 2005, Birmingham did send a letter to the three credit-reporting agencies. The letter provided his name, his current address in Utah, and a contact telephone number. It requested a free credit report and the removal from his credit file of derogatory information provided by Verizon. Experian responded a week later in a letter stating that it could not honor his request because it was "unable to access [his] report using the identification information [he] provided." *Id.* at 459. The letter explained that for a person to access his own credit report, Experian requires the person's full name, including

middle name and generation; current mailing address and two proofs of the address; social security number; date of birth; and complete addresses for the past two years, including apartment numbers and zip codes.  The letter provided an internet address and phone number to contact if Birmingham already had a personal credit report, thought the information to be inaccurate, and wished to request an investigation.  Experian had no record of a response.  (Although Birmingham stated in his deposition that he "believe[d] that [he] probably did" respond to the letter, *id.* at 754, he had no specific recollection of doing so and does not press the point on appeal.)

Experian's procedures for ensuring the accuracy of credit entries were described in affidavits from two employees:  Kimberly Hughes, a Consumer Affairs Specialist Consultant, and Kathleen M. Centanni, a Compliance Manager.[1]

---

[1]Birmingham argues that we should disregard the affidavits of Hughes and Centanni.  He gives several reasons.  First, he asserts that Experian did not disclose that Centanni was a potential witness and provided no contact information for Hughes.  But the record is to the contrary.  Next, he argues that we should disregard some of their statements because Experian failed to include documentary evidence in support of them.  He relies on the since-revised version of Federal Rule of Civil Procedure 56 applicable at the time of the district-court proceedings.  Rule 56(c)(1) stated:  "If a paper or part of a paper is referred to in an affidavit [supporting or opposing summary judgment], a sworn or certified copy must be attached to or served with the affidavit."  But Birmingham does not indicate on appeal how he was prejudiced by Experian's failure to attach a document to the declarations.  His reply brief on appeal refers only to the nonproduction of Experian "documents reciting the procedures referred to in [the] declarations."  Aplt. Reply Br. at 17.  The declarations, however, are based on personal knowledge of the declarants regarding Experian's procedures, not their interpretation of the language of some manual.  They do not refer to or rely on

(continued...)

Both stated that to prevent identity theft and fraud, Experian requires the consumer to provide his social security number and other specified identifying information before Experian takes any action regarding his file. If a consumer requests an investigation into an item listed on his report but fails to provide a social security number or provides an address that had never been previously reported to Experian by a credit grantor, Experian sends a letter explaining that further verification of the consumer's identity is required to initiate an investigation. Once sufficient information has been provided, Experian contacts the source of the disputed information and describes the dispute. The source must research the information reported and respond regarding the accuracy of the information. Depending on the answer, Experian leaves the item as is, deletes it, or changes it in a manner specified by the source. It also sends the consumer a disclosure stating the results of the investigation and instructs the consumer on additional steps that he may take.

On this record, Experian was entitled to summary judgment on the willful-misconduct claim. Experian's standard procedures appear reasonable. More

---

[1](...continued)
any manual and hence did not need to attach one. *See* 10A Charles A. Wright et al, Federal Practice and Procedure: Civil 3d § 2722 at 381 (1998) (under Rule 56(c)(1), "testimony otherwise admissible need not be stricken simply because it contains evidence that also appears in written documents that are not attached to the affidavit.") Finally, Birmingham appears to argue that we should disregard many of the statements in the two affidavits because they set out identical facts. But we are aware of no authority prohibiting such repetition.

importantly, we have been pointed to no described practice that would be a reckless violation of the FCRA. And there is no evidence that Experian's specific actions with respect to Birmingham were reckless. He claims to have complained to Experian about Verizon in January and July 2005. But Experian's response in July was appropriate; it asked for additional identifying information to be sure it was being contacted by the consumer himself. As for January, Experian added a security alert in Birmingham's credit file after being contacted by another credit-reporting agency; and it sent Birmingham a letter informing him of what was needed to place an extended fraud alert in his file. It has no record of any complaint directly from Birmingham. Even if one believes Birmingham's vague assertion that he contacted Experian in January, the most one can reasonably infer from the absence of any record of that contact in Experian's files is that a clerical employee negligently failed to record the complaint. To infer that Experian acted recklessly in response to the complaint would require inappropriate speculation. A reasonable person reviewing the evidence before the district court could not find Experian to have committed a willful violation of the FCRA.

## II.  CLAIMS AGAINST VERIZON DEFENDANTS

### A.  The Court Proceedings

Birmingham filed his complaint on August 23, 2006, and filed an amended complaint (the Complaint) on December 20, before any defendants answered. *See* Fed. R. Civ. P. 15(a)(1) (allowing one amendment without court permission if

-11-

defendant has not responded).  The Complaint named Experian, Equifax, and TransUnion as defendants and listed the following Verizon Defendants:

> [1] Verizon Communications, Inc., and Vodafone Group, PLC, a joint venture dba Verizon Wireless; [2] Cellular Inc. Network Corporation, Utah RSA 6 Limited Partnership, Verizon Power Partners Inc. and Wasatch Utah RSA No. 2 Limited Partnership dba Verizon Wireless; [3] Verizon Wireless Utah, LLC operating under the name and style of Verizon Wireless; [4] Verizon Wireless (VAW) LLC, operating under the name and style of Verizon Wireless.

Aplt. App., Vol. I at 1.  The Complaint stated that any reference to "Verizon" was "a reference to whichever of the above named Verizon entities in fact provided cellular telephone service to the Plaintiff and billed him for the cellular telephone service complained of below." *Id.* at 5.  It alleged that the Verizon Defendants violated the FCRA, 15 U.S.C. § 1681s-2(b), and were liable under Utah law for negligence, defamation, invasion of privacy, and violations of the Utah Consumer Sales Practices Act.

An answer was filed on February 5, 2007, for Verizon Communications Inc.; Cellular, Inc. Network Corporation; Utah RSA 6 Limited Partnership; Verizon Power Partners, Inc.; Wasatch Utah RSA No. 2 Limited Partnership; Verizon Wireless Utah, LLC, operating under the name and style of Verizon Wireless; and Verizon Wireless (VAW) LLC.  Vodafone Group, Plc, which had been named in the Complaint as belonging to a Verizon Wireless joint venture with Verizon Communications Inc., did not file an answer.  On April 17, 2007,

the district court issued a scheduling order requiring fact discovery to be completed by November 15.

Birmingham's scatter-gun naming of Verizon Defendants perhaps made sense at the outset of the lawsuit. Determining who was the precise entity that had caused the alleged harm could have been a substantial challenge. But, as the following account shows, the matter was clarified within months, and Birmingham, inexplicably, did not respond appropriately.

The first important information came to Birmingham the same day as the district court's scheduling order (April 17, 2007), about two months after the Verizon Defendants filed their answer. Counsel for the Verizon Defendants (Verizon's counsel) sent Birmingham's counsel a letter stating that Verizon Wireless (VAW), LLC was the only defendant that could have done business with Birmingham, because it was the only named entity that was "licensed to provide cellular service in Mr. Birmingham's market." *Id.*, Vol. IV at 1533. He requested that Birmingham stipulate to dismissal of the other entities, but Birmingham did not agree.

The record reflects no further activity in the case until November 13, when the parties filed a joint motion to extend the discovery deadline to February 15, 2008. The district court granted the motion. Two days before that deadline, Birmingham moved for entry of default against Vodafone Group, Plc, which entered a special appearance (through Verizon's counsel) to oppose the motion,

claiming improper service of the complaint. The court scheduled a hearing on the motion; but Birmingham's counsel failed to appear, and the court denied the motion.

On the deadline for completing discovery, Birmingham moved to extend the deadline, complaining of difficulties posed by the defendants in conducting discovery. Although they did not object to the extension, the Verizon Defendants' response objected to Birmingham's characterization of their behavior. The district court extended the discovery deadline to May 15, 2008.

On May 7, 2008, Birmingham's counsel served Verizon's counsel with a notice under Federal Rule of Civil Procedure 30(b)(6) that defendant Verizon Communications Inc. and nonparty Vodafone Group, Plc, as the members of a joint venture doing business as Verizon Wireless, designate a representative to testify at a deposition regarding Birmingham's claims. Verizon's counsel promptly responded that it would not be producing these witnesses because no representative or employee of Verizon Communications Inc. had knowledge of the subject matter of the Complaint, and because Vodafone Group, Plc was not a party to the suit. He reiterated that Verizon Wireless (VAW), LLC was the only named entity that could have had business with Birmingham. Between May 12 and May 14, counsel exchanged a series of emails on the matter. Birmingham's counsel maintained that "Verizon Wireless" was the party in interest to the suit, and that, according to an attached copy of an SEC filing from 2003, "Verizon

Communications, Inc. and Vodafone Group, PLC, were directly doing business as partners through a partnership named Cellco Partnership, dba as Verizon Wireless." *Id.*, Vol. V at 1644 (emphasis omitted). He also requested that, given the confusion, each of the Verizon Defendants provide individual responses to his discovery requests, instead of the joint responses that had been previously provided.

Verizon's counsel responded with a letter describing the corporate structure of the relevant entities. The letter explained that "Verizon Wireless" is not a company, but a trade name; that 172 entities do business under the "Verizon Wireless" umbrella, with most of them having permission to use the "Verizon Wireless" trade name; and that "[t]here are so many entities for tax reasons, and because of the nature of the cellular telephone services industry and FCC oversight of that industry." *Id.* at 1651. It said that Verizon Communications Inc. and Vodafone Group, Plc do not have a "partnership" doing business as "Verizon Wireless." Rather, they "indirectly" own an entity called "Cellco Partnership, d/b/a Verizon Wireless" through "indirect subsidiaries" (that is, subsidiaries separated from the parent by one or more levels of intermediate subsidiaries): Verizon Communications Inc. indirectly owns 55% of Cellco through five indirect subsidiaries: (1) Bell Atlantic Cellular Holdings, L.P., (2) NYNEX PCS Inc., (3) PCSCO Partnership, (4) GTE Wireless Incorporated, and (5) GTE Wireless of Ohio Incorporated; and Vodafone Group, Plc indirectly owns

-15-

45% of Cellco through two indirect subsidiaries: (1) PCS Nucleus, L.P., and (2) JV PartnerCo, L.L.C. *Id.* at 1651–52.

In a follow-up letter on May 15, 2008, the discovery deadline, Verizon's counsel proposed a compromise to resolve the dispute over the noticing of a Rule 30(b)(6) witness: Birmingham could serve a Rule 30(b)(6) notice on Verizon Wireless (VAW), LLC in exchange for Birmingham's dismissing without prejudice all Verizon Defendants except Verizon Wireless (VAW), LLC.

On that same day, Birmingham filed another motion for more time to complete discovery. The motion complained that Birmingham's counsel had been thwarted in taking depositions of representatives of defendant Verizon Communications Inc. and nonparty Vodafone Group, Plc. It also argued that by providing collective responses to discovery, the Verizon Defendants had "effectively admitted that all of these entities act together and that all were involved in or are fully culpable for the transactions of which [Birmingham] complains." Aplt. Supp. App. at 29. The response from Verizon's counsel disputed Birmingham's version of the discovery dispute. It explained that (1) "Verizon Wireless" is a trade name and (2) because Verizon Communications Inc. holds stock in a number of subsidiaries and conducts no other business, it never had a business relationship with Birmingham, and its employees had no involvement or knowledge of the events giving rise to his complaint.

These assertions about Verizon Communications Inc.'s noninvolvement were reiterated in its motion for summary judgment filed shortly thereafter, on May 30, 2008. Attached to the motion was an affidavit by Bernadette Miragliotta, who was responsible for handling Verizon Communications Inc.'s litigation matters. It repeated the statements previously made by Verizon's counsel regarding the status of Verizon Communications Inc. as a mere holding company whose subsidiaries owned 55% of Cellco, which it described as a Delaware general partnership that "provides wireless telecommunications services." Aplt. App., Vol. I at 122. Birmingham failed to file a response to the summary-judgment motion, and the district court granted the motion on July 15.

In the meantime, on June 5, 2008—after the filing of the affidavit regarding Verizon Communications Inc. and Cellco, but before the grant of the summary-judgment motion—the district court held a hearing on Birmingham's motion to extend discovery. Birmingham's counsel stated that the "primary issue" was the Verizon Defendants' failure to respond to the request to provide a witness under Rule 30(b)(6). *Id.* at 132. Verizon's counsel said once more that his clients could not comply with the request because Birmingham had not served the 30(b)(6) deposition notices on the proper parties. He maintained the position that Verizon Wireless VAW, LLC was the only named defendant that could have had any business dealings with Birmingham, and added that he believed that "the people that sent the credit report are employed by an entity that's not even a defendant

-17-

called Cellco Partnership." *Id.* at 139. In response, Birmingham's counsel asserted that Cellco was a party to the action.

Verizon's counsel again explained that Verizon Communications Inc. and Vodaphone Group, Plc were merely holding companies that indirectly owned Cellco through subsidiaries and were not Cellco partners. He proposed a compromise: If Birmingham's counsel sent the Rule 30(b)(6) notice to Verizon Wireless VAW, LLC (and not to Verizon Communications Inc. and Vodafone Group, Plc), then he would produce a witness with knowledge of the report of Birmingham's information to the credit-reporting agencies, even if that witness turned out to be employed by Cellco. He named nine potential witnesses but could not confirm at that time which entity—Cellco or Verizon Wireless (VAW), LLC—employed each one. The district court ordered Verizon's counsel to produce the witness or witnesses from his list of names and extended discovery to August 15, 2008. It warned that it would not extend discovery past that date and that it would not consider any additional motions to continue.

On July 25, 2008, two weeks after the court granted Verizon Communications Inc.'s summary-judgment motion, Birmingham's counsel sent an email to Verizon's counsel stating that "[i]t is now apparent that the Verizon Wireless we are dealing with is Cellco Partnership." Aplee. Supp. App. at 117. The email attached a proposed stipulation to amend the Complaint, which included the following statement: "Plaintiff incorrectly named Verizon

Communications and Vodafone Group, PLC, as parties to this action. The correct party to be named is Cellco Partnership, a Delaware general partnership doing business as Verizon Wireless." *Id.* at 119. In an email dated July 28, Verizon's counsel stated that his clients would so stipulate "if you agree to dismiss the other Verizon entities, all of which are improperly named. If you agree to do so, I will accept service for Cellco." *Id.* at 122. Emails then went back and forth discussing whether the amendment would relate back to the filing of the original complaint under Federal Rule of Civil Procedure 15(c), and Verizon's counsel ultimately agreed on August 8 that the amendment would relate back.

An hour later, however, Birmingham's counsel requested the additional stipulation that "all discovery responses will fully apply to Cellco to the same degree as if it had responded to those requests." *Id.* at 148. In an August 11, 2008, letter, Verizon's counsel refused to accept the additional condition, explaining that his clients were not willing to renegotiate the prior stipulation and that if Birmingham did not intend to abide by the original agreement, the Verizon Defendants would not stipulate to the filing of the second amended complaint. He further explained that even if his clients were willing to renegotiate, he could not agree to a stipulation that would certify that the prior "discovery responses prepared and submitted by other separate entities (which have been defendants for over one year) are complete and accurate as to Cellco." Aplt. App., Vol. V at 1657. Counsel did state, however, that he was willing to consider a compromise

in which Cellco would "review and supplement responses filed by other Verizon-related entities, if necessary." *Id.* Birmingham never responded to the August 11 letter.

On August 15, 2008, the Verizon Defendants produced for deposition Scott Scarbrough, one of the potential witnesses named at the June 5 hearing. Scarbrough testified that he was a Cellco employee and provided information regarding the report on Birmingham's account to the credit-reporting agencies.

The remaining Verizon Defendants (Verizon Communications Inc. had already been granted a summary judgment) filed two motions to dismiss and two for summary judgment on August 21, 22, and 29, 2008, just before the September 1 deadline for dispositive motions. The motions addressed the merits of Birmingham's claims, not the question of who was the proper defendant. Birmingham made repeated requests for extensions of time to respond. The Verizon Defendants agreed to five requests to extend Birmingham's time to respond to their two motions for summary judgment, giving him until December 8. Birmingham, however, did not meet the extended deadlines. On December 8 he filed a memorandum in opposition to only one of the motions. He did not file his memorandum in opposition to the other summary-judgment motion until January 7, 2009, thirty days after the filing deadline and only two days before the hearing on the motions (which had been postponed from the original scheduled date of November 13, 2008). The next day, January 8, Birmingham filed a motion

requesting the district court to accept the untimely opposition brief; an accompanying memorandum argued (1) that his failure to file by December 8, 2008, was excusable neglect under Rule 6(b)(2) of the Federal Rules of Civil Procedure because unanticipated litigation demands had made it impossible to complete his memorandum on time; (2) that under Fed. R. Civ. P. 56(c) his submission of materials in opposition to the summary-judgment motion was permitted until the day before the hearing; and (3) that his opposition brief incorporated the arguments from his brief in opposition to the Verizon Defendants' other summary-judgment motion, which had been timely filed.[2]

The district court held the hearing on January 9, 2009, as scheduled. On January 26 and March 13 it issued orders granting in part and denying in part the Verizon Defendants' motions. By February 25 all other defendants had settled or been granted summary judgment. The March 13 order stated that the court would address at the final pretrial conference the "question whether there remain genuine issues of material fact requiring a trial", *id.*, Vol. IV at 1344; and the court scheduled that conference for April 28.

---

[2]Similar issues arose concerning the filing of Birmingham's opposition to Experian's summary-judgment motion. Experian agreed to three extensions sought by Birmingham but opposed his fourth request, which was nevertheless granted by the court (to give him until November 18 to respond). Yet he did not file his memorandum in opposition to Experian's motion until November 19, did not file his appendix to the motion until another week had passed, and submitted an affidavit in opposition seven weeks later, the day before the January 9 hearing.

On April 28, 2009—14 minutes before the final pretrial conference was to begin—Birmingham's counsel filed a motion under Rules 15(a) and 15(c) of the Federal Rules of Civil Procedure to amend the Complaint to add Cellco as a defendant. Although the motion stated that the grounds for the motion were more fully stated in a supporting memorandum, the memorandum was not filed until the next day. The district court began the conference by asking whether Cellco was the only remaining defendant. Verizon's counsel responded that Cellco was not a party and that he had notified Birmingham's counsel of the need to add Cellco as a defendant over a year before, but that Birmingham's counsel had failed to do so. Verizon's counsel then recounted the history of the issue, asserting that by May 2007 Birmingham had been notified that he had not named the right defendant; that during the dispute over Birmingham's motion to extend the time for discovery and at the hearing on June 5, 2008, he had made it clear that Cellco was the proper defendant in the action; that Birmingham's counsel had conceded as much during the summer-of-2008 negotiations to stipulate to a proposed amended complaint; and that after those negotiations had broken down in August 2008, Birmingham's counsel had made no mention of the issue until four days before the final pretrial conference, when he had informed Verizon's counsel of his intention to file the motion to amend the complaint.

Birmingham's counsel provided only one explanation for the delay in moving to amend: that the various dispositive motions were filed either

immediately before or immediately after his deposition of Scarbrough and that those motions "fully occupied things" until they were decided. *Id.*, Vol. V at 1939. He contended that Birmingham had been "short-sheeted" in discovery and stated that he would like the opportunity to take "the 30(b)(6) deposition of Cellco Partnership." *Id.* at 1941. He also argued that Cellco was already a party. Verizon's counsel disputed Birmingham's excuse for delay. He asserted that there was time to amend before the dispositive motions were filed and after the motions had been heard by the court in January 2009.

The district court said that it wished "to bring this matter to a head," *id.* at 1940, and that the central question was whether or not Cellco was present as a defendant. It declared that it would not allow further discovery, explaining that Birmingham could not now complain about inadequate discovery responses because he should have filed a motion to compel rather than "fuss around for another six or eight or ten months or a year." *Id.* at 1942. After hearing argument from the parties, the court determined that Cellco was not a party, and it stated that once Birmingham had become aware that the proper defendant was Cellco, he should have moved to add Cellco as a defendant. The court concluded that it had "no alternative but to deny [the belated] motion to amend" and it must dismiss the case "because . . . the wrong parties are here and the right party is not." *Id.* at 1951–52.

At a hearing on June 5, 2009, to consider Verizon counsel's proposed order of dismissal, Birmingham made further arguments that Cellco was already a party in the case. The district court overruled Birmingham's objections, but it made the dismissal without prejudice "just to make sure that we're not mistaken as to the identified partnership." *Id.* at 2010.

**B.      Analysis**

By the time of the dismissal of Birmingham's claims in district court, there was no dispute that the entity that had informed the major credit-reporting agencies of Birmingham's failure to pay his bills—and therefore the sole entity that would be liable to him for an erroneous report—was Cellco Partnership, d/b/a Verizon Wireless. Cellco, however, was not a named defendant in Birmingham's Complaint; indeed, the word *Cellco* does not appear in the Complaint. To salvage his claim, Birmingham takes two tacks on appeal. First, he argues that Cellco, although unnamed as a defendant, was actually a defendant in the litigation. Second, he argues that the district court should have joined, or this court should join, Cellco as a required party. For the reasons that follow, we reject both arguments.

**1.      Was Cellco a Party Below**

Birmingham presents a grabbag of arguments why Cellco, although not named as a defendant, was nevertheless a party to this litigation.

One theme that pervades these arguments is that Cellco was related to the named parties through corporate parent-subsidiary or partner-partnership relationships. But neither type of relationship can save him. With respect to parent-subsidiary relationships, "[a] holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004) (internal quotation marks omitted); *see also* 1 William Meade Fletcher, Cyclopedia of the Law of Corporations § 26 (rev. ed. 2010) ("A subsidiary corporation is presumed to be a separate and distinct entity from its parent corporation."); *cf. United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." (internal quotation marks omitted)). Yet Birmingham presents no evidence or argument that some corporate veil should be pierced so that a corporation not named in the Complaint can be treated as the alter ego of a named party. *See generally* Phillip L. Blumberg, et al., 1 Blumberg on Corporate Groups, Part III: Common Law Veil Piercing Theory (2d ed. 2005).[3] And as for

---

[3]We note that the relationship between Cellco and defendant Verizon Wireless Utah, LLC, was not technically that of a parent and subsidiary. Verizon Wireless Utah, LLC, was a Delaware limited liability company, and Cellco was its sole member (owner). But under Delaware law a limited liability company and its members are treated the same as a subsidiary and a parent for liability purposes. *See Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 287 (Del. 2006).

(continued...)

the partner-partnership relationship, even if there were some circumstances in which a partnership could be treated as a party when only the partner is named, the Complaint fails to name any of the partners of the Cellco partnership.

True, there was confusion, at least early in this litigation, regarding what entity reported Birmingham's failure to pay bills. Birmingham contends, for example, (1) that the Verizon Defendants erroneously admitted in their answer to the Complaint that they all had a commercial relationship with Birmingham and had received information concerning his disputes, and (2) that their initial disclosures identified Cellco employees as witnesses concerning their business processes. But such errors by parties could not transform nonparty entities into parties. Birmingham suggests that when parties admitted doing things that were actually done by Cellco, then they were effectively admitting that they were

---

[3](...continued)
(LLC provides "tax benefits akin to a partnership and limited liability akin to the corporate form"); *Thomas v. Hobbs*, No. C.A. 04C-02-010 RFS, 2005 WL 1653947, \*2 (Del. Super. Ct. April 27, 2005) (member of LLC can be personally liable only if corporate veil can be pierced); *Poore v. Fox Hollow Enters.*, No. C.A. 93A-09-005, 1994 WL 150872, \*2 (Del. Super. Ct. March 29, 1994) (LLC is "a separate legal entity" and "[t]he interest of a member . . . is analogous to shareholders of a corporation"; like a corporation, but unlike a partnership, it can be represented in court only by a licensed attorney); *Credit Suisse Sec. (USA) LLC v. W. Coast Opportunity Fund, LLC*, C.A. No. 4380-VCN, 2009 WL 2356881, \*3 & n.23 (Del. Ch. July 30, 2009) ("The limited liability company—at least in the absence of factual allegations supporting 'piercing the veil,' fraud, or the like—is a separate legal entity and that status must be respected," even if it has only one member.); *Wellman v. Dow Chemical Co.*, Civ. No. 05-280-SLR, 2007 WL 842084, \*2 (D. Del. March 20, 2007) (LLC "is treated for liability purposes like a corporation" and a member can be held liable only by piercing the corporate veil).

Cellco, thereby making Cellco a defendant. We reject the suggestion. Its implications are mindboggling. By admitting that it performed certain acts, a party defendant could impose liability on a nonparty who actually performed the acts.

For the same reason, we cannot accept Birmingham's argument that Verizon's counsel admitted that he was representing Cellco in the case because he raised arguments on the merits, rather than simply denying involvement. Again, parties cannot make a nonparty into a party in the action except by a pleading, such as a crossclaim or a motion to join, explicitly seeking party status for the person.

There is nothing unfair about requiring the plaintiff to name the proper defendant in a complaint. When, as implicitly alleged by Birmingham, the proper defendant is unknown to the plaintiff because of confusion created by defendants who are in league with the nonparty proper defendant, Federal Rule of Civil Procedure 15(a) allows the plaintiff to join the proper defendant once the confusion is dissipated; and under Rule 15(c), the plaintiff will not be time-barred by the delayed joinder.[4] It is worth noting that Rule 15(c)(1)(C) does not provide

_____

[4]Rule 15(c)(1) states in pertinent part:

An amendment to a pleading relates back to the date of the original pleading when:
. . . .
(B) the amendment asserts a claim or defense that arose out of

(continued...)

for *deeming* a person to be a party; rather it speaks in terms of an *amendment* to change "the party or the naming of the party against whom a claim is asserted."

We can also easily distinguish Birmingham's authority saying that a party can make a general appearance in a case without being served with process. *See, e.g.*, *FDIC v. Oaklawn Apartments*, 959 F.2d 170 (10th Cir. 1992). That authority does not dispense with the requirement that a person be named in the complaint to be a party. It addresses only the circumstances in which a *party* is subject to the court's jurisdiction despite not being properly served.

In addition, we are not persuaded by Birmingham's invocation of the res judicata doctrine that a nonparty may be bound by a judgment if the nonparty was "adequately represented by someone with the same interests who was a party to the suit." *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) (brackets and internal quotation marks omitted) (giving class actions and suits by fiduciaries as

[4](...continued)
the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
(i) received such notice of the action that it will not be prejudiced in defending on the merits; and
(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

examples). That doctrine applies once a judgment has been rendered; the judgment may then have a claim- or issue-preclusive effect on later litigation. Even if, as we doubt, Cellco could have been bound by a judgment against one of the named defendants, there has been no such judgment here, so the res judicata doctrine has no application. And the doctrine even lacks any persuasive force by analogy, because Birmingham is not seeking to parlay his victory against a party into a victory against Cellco; on the contrary, he is seeking to obtain rights with respect to Cellco after having *lost* his claims against the parties that were purportedly representing Cellco's interests.

### 2. Denial of Motion to Amend Complaint to Add Cellco As a Defendant

Finally, Birmingham argues that the district court abused its discretion in denying his motion to amend the Complaint to add Cellco as a defendant. The court denied the motion as untimely. Birmingham had known for at least nine months that Cellco was the entity that had made the adverse credit report, but he waited to file his motion until minutes before the final pretrial conference, at which the court was to rule on whether the case could proceed.

We doubt that Birmingham has preserved on appeal any argument that the district court erred in ruling that his motion to add Cellco as a defendant was untimely. Some language in his opening brief on appeal might be read to challenge the ruling; but construing his brief as raising the issue would be a

stretch, and his reply brief states that he did not argue in his opening brief whether "Mr. Birmingham unduly delayed in moving to amend his complaint to specifically name Cellco Partnership." Aplt. Reply Br. at 13. Our general practice is to decline to address issues not raised on appeal until the reply brief. *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000).

In any event, Birmingham's argument on timeliness in his reply brief is unpersuasive. He relies on *Minter v. Prime Equipment Co.*, 451 F.3d 1196 (10th Cir. 2006), which reversed a district court's decision disallowing as untimely an amendment to a complaint to add a claim. But *Minter* cannot save Birmingham. *Minter* recognized this court's precedents that a district court has discretion to deny a motion to amend as untimely when the movant's delay is unexplained. *See id.* at 1206. Here, unlike the plaintiff in *Minter*, Birmingham failed to provide an adequate explanation for not moving to amend during the nine months after he proposed a stipulation stating that he had named incorrect parties and that Cellco was the correct party. His sole excuse to the district court was that he was tied up in summary-judgment disputes and was awaiting their resolution. We see no reason why an uncomplicated motion to amend should not have been filed promptly upon discovery of the error in naming parties. Even if Birmingham might have learned something from the court's rulings on the dispositive motions that would have enabled him to "improve" an amended complaint naming Cellco, he has not explained why that would justify delaying the amendment. Moreover,

the district court found that the Verizon Defendants would be prejudiced by a grant of the motion to amend. Yet *Minter* recognizes that prejudice to nonmovants is a proper ground for denying a motion to amend, *id.* at 1207–08, and Birmingham has not argued lack of prejudice in his appellate briefs.

Birmingham does, however, raise an alternative ground for making Cellco a party. He claims that Cellco was a required party that should have been joined as a defendant by the district court. He relies on Federal Rule of Civil Procedure 19(a)(1), which states:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>     (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>     (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>         (i) as a practical matter impair or impede the person's ability to protect the interest; or
>         (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Citing *Mescalero Apache Tribe v. New Mexico,* 131 F.3d 1379, 1383 (10th Cir. 1997), he argues that "the issue of indispensability can be raised at any time," Aplt. Br. at 55, perhaps suggesting that we must consider the matter even though not raised below.

Birmingham, however, labors under a fundamental misunderstanding of Rule 19. It is not a means by which a plaintiff can join a truly liable defendant if

he has mistakenly sued innocent parties. *See* 4 James Wm. Moore, Moore's Federal Practice § 19.02 (3d ed. 2010) (Rule 19 "reflect[s] a policy decision that [in certain circumstances] other interests—primarily the protection of other parties and absentees—outweigh the interest in plaintiff autonomy [in structuring the litigation].").  Rule 19 has no application here because even without adding Cellco as a party, (1) the district court could "accord complete relief among existing parties," Fed. R. Civ. P. 19(a)(1)(A), by dismissing the claims against the nonculpable defendants; (2) Cellco is not prejudiced in any way by the failure to be joined; and (3) there is no risk that an existing party would be subject to inconsistent obligations.  Accordingly, we reject Birmingham's Rule 19 argument.

## CONCLUSION

We AFFIRM the district court's grant of summary judgment to Experian and AFFIRM the denial of the motion to amend and the dismissal of the Verizon Defendants.